UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MARY C. MARKS,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:15-cv-339

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2] This case is before the Court upon Plaintiff's Statement of Errors (doc. 7), the Commissioner's memorandum in opposition (doc. 10), Plaintiff's reply (doc. 11), the administrative record (doc. 6),[3] and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920[,] respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.

## A. Procedural History

Plaintiff filed for DIB and SSI alleging a disability onset date of October 15, 2005. PageID 185-88, 203-13. Plaintiff claims disability as a result of a number of alleged impairments including residuals of a 1988 right ankle fracture, diabetes mellitus, and depression. PageID 68.

After initial denials of her applications, Plaintiff received a hearing before ALJ Gregory G. Kenyon on January 31, 2014. PageID 80-104. The ALJ issued a written decision on March 27, 2014 finding Plaintiff not disabled. PageID 64-75. Specifically, the ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since October 15, 2005, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3. The claimant has the following severe impairments: residuals of a 1988 right ankle fracture; diabetes mellitus; and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The undersigned finds that the claimant retains the residual functional capacity ["RFC"] to perform medium[4] level work subject to the following limitations: (1) frequent crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) limited to performing unskilled, simple, repetitive tasks; (5) limited to jobs involving no more than occasional contact with co-workers and supervisors; (6) no public contact; (7) no jobs involving fast paced production work or strict production quotas; and (8) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next.

6. The claimant is unable to perform any [of her] past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born [in] 1958 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (20 CFR 404.1568 and 416.964).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

---

[4] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(c). An individual who can perform medium work is presumed also able to perform light and sedentary work. *Id.* Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 66-74.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 46-49. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

### B. Evidence of Record

The ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 63-73. Plaintiff and the Commissioner both summarize the record evidence in their respective filings. Doc. 7 at PageID 600-05; doc. 10 at PageID 619-22. Accordingly, except as otherwise noted, the undersigned incorporates the ALJ's recitation of the evidence as well as the parties' summaries of the evidentiary record. Where applicable, the Court will identify the medical evidence relevant to this Report and Recommendation.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?

  3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

  4.  Considering the claimant's RFC, can he or she perform his or her past relevant work?

  5.  Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In her Statement of Errors, Plaintiff argues that the ALJ erred in: (1) relying on the opinions of record-reviewers Gary Hinzman, M.D. and Diane Manos, M.D. to the exclusion of treating physician Rajindra Bhat, M.D.; and (2) finding her not fully credible. Doc. 7 at PageID 606-12. The undersigned finds the ALJ committed reversible error in weighing Dr. Bhat's opinion, and thus, does not reach Plaintiff's second assignment of error.

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists top the hierarchy. *Id.* "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id.* "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id.* "The regulations provide progressively more rigorous tests for

6

weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.,* 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original). This requirement is known as the "treating physician" rule. *Blakley v. Comm'r of Soc. Sec*., 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted). Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581 F.3d at 406. Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.*

Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406; *see also* 20 C.F.R. § 404.1527(c).[5] In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec*., No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

Dr. Bhat treated Plaintiff for various physical impairments beginning in 2005. *See* PageID 399, 401. On November 9, 2010, he listed Plaintiff's medical conditions as including chronic right ankle pain, plantar fasciitis, diabetes, hypertension, gastroesophageal reflux disease ("GERD"), and obesity. PageID 441. Dr. Bhat also opined that Plaintiff can walk/stand for thirty minutes at a time (up to two hours out of an eight hour workday); can frequently lift/carry up to five pounds and occasionally lift/carry up to ten pounds; is markedly limited in her ability to push/pull and perform repetitive foot movements; and is moderately limited in her ability to bend. PageID 442. Such limitations translate into a restriction to sedentary work activity. *See* PageID 71, 103; 20 C.F.R. § 404.1567(a); Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (stating that, at the "sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting

---

[5] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12 CV 3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id*.

8

should generally total approximately 6 hours"). Although typically an individual who can perform sedentary work is deemed "not disabled," given Plaintiff's age and other relevant vocational factors, it is arguable that a sedentary work finding would deem Plaintiff disabled under the Medical-Vocational Guidelines ("Grid").[6] *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.10.

The ALJ gave Dr. Bhat's opinion "little weight," stating:

> The claimant's right ankle pain began in 1988 after a fracture. However, the claimant returned to her light work activity until 2005 when she was let go for lack of educational credentials. There is otherwise no reason to believe she would have stopped working. The claimant's "plantar fasciitis" is not well documented in the record and nor is the treatment therefore. Her diabetes is uncontrolled because she is not compliant with diet, exercise, or medications. Lastly, the record reflects her treatment for her impairments did not begin until September 2005 or after her termination. Dr. Bhat's records do not suggest a reason the claimant could not perform medium work activity, which has the same stand/walk requirements as light work.

PageID 71-72. The undersigned agrees with Plaintiff that the ALJ erred in analyzing, and ultimately discounting, Dr. Bhat's opinion.

Initially, the undersigned notes that the ALJ failed to mention the "controlling weight" concept and made no specific finding -- and provided no analysis -- as to whether Dr. Bhat's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with other substantial evidence in the case record[,]" *i.e.*, the factors for determining whether a treating physician's opinion is entitled to controlling weight. *See* 20

---

[6] The ALJ considers the Grid "in the fifth and final stage of the disability determination, after it has been determined that the claimant has not met the requirements of a listed impairment but is nevertheless incapable of performing past relevant work." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). The Grid sets forth the vocational factors of age, education, work experience, and maximum sustained work capability. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 200.00(a). A plaintiff's "maximum sustained work capability" is categorized as one of five "exertional levels" -- including the sedentary exertional level -- and is defined as "[t]he highest functional level a person can perform on a regular work basis[.]" SSR 83-10, 1983 WL 31251, at *6.

9

C.F.R. § 404.1527(c)(2). The ALJ's silence in this regard omits reference to the number of objective and/or clinical findings tending to support Dr. Bhat's opinion, such as: tenderness and reduced range of motion on exam, PageID 375; an abnormal gait, PageID 354; multiple x-rays indicating joint space narrowing at the ankle mortise associated with sclerosis and soft-tissue swelling, PageID 408, 556; decreased sensation in her feet, right ankle swelling, and decreased range of motion, PageID 480, 486, 518, 528; and increased lumbar lordosis. PageID 573. The ALJ's failure to conduct a controlling weight analysis -- and, further, to address the foregoing objective and/or clinical evidence in rejecting Dr. Bhat's opinion -- deprives the Court of the opportunity to meaningfully review whether he undertook the "two-step inquiry" required when analyzing treating source opinions. *See supra* note 5; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-78 (6th Cir. 2013) (stating that the lack of explanation regarding the "controlling weight [analysis] hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation"). Such failure amounts to reversible error. *See Aytch v. Comm'r of Soc. Sec.*, No. 3:13-cv-135, 2014 WL 4080075, at *5 (S.D. Ohio Aug. 19, 2014) (citation omitted).

Even assuming, *arguendo*, that the ALJ properly conducted a controlling weight analysis -- which the undersigned concludes he did not -- the ALJ failed to provide good reasons for the ultimate weight given to Dr. Bhat's opinion. For example, the ALJ tried to discredit Dr. Bhat's opinion concerning Plaintiff's physical limitations by pointing out that her "diabetes is uncontrolled because she is not compliant with diet, exercise, or medications." PageID 72. Under the Social Security regulations, a claimant must follow treatment recommendations in order to be awarded benefits, *unless* the claimant can demonstrate a "good reason" for non-compliance. 20 C.F.R. § 404.1530(a)-(b).

Here, the ALJ failed to consider whether Plaintiff's non-compliance with treatment was due to a "good reason." This failure might have been harmless had the record contained no evidence supporting a plausible reason for non-compliance. The record contains such evidence, however. For instance, evidence of record shows that, at one point, Plaintiff ran out of medication and could not afford to buy more. PageID 395; *see also* SSR 82-59, 1982 WL 31384, at *1 (Jan. 1, 1982) (stating that an inability to afford treatment can be an acceptable reason for failing to comply with treatment). In addition, mental health treatment records note that Plaintiff was overwhelmed with her diabetes care, and was caring for her brother who was gravely ill with Stage IV cancer. PageID 536. Additionally, the record reveals that Plaintiff suffers from depression, a mental health disorder the ALJ found to be a "severe impairment" in Plaintiff's case. *See* PageID 66. As stated by the Sixth Circuit, the failure to seek or comply with treatment recommendations can simply be a symptom of mental health disorders. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009). With regard to Plaintiff's purported failure to comply with diet recommendations, the Court also notes that "physicians' recommendations to lose weight do not necessarily constitute a prescribed course of treatment, nor does a claimant's failure to accomplish the recommended change constitute a refusal to undertake treatment." *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986); *Posey v. Heckler*, No. 85-5410, 1987 WL 36583, at *3 (6th Cir. Jan 14. 1987).

Based upon the foregoing, the undersigned concludes that the ALJ's cursory treatment of the non-compliance issue fails to demonstrate consideration of any reason for Plaintiff's purported non-compliance with treatment. Absent further explanation by the ALJ, the undersigned concludes that Plaintiff's purported failure to comply with treatment does not provide a "good reason" for rejecting Dr. Bhat's opinion.

The undersigned also finds the ALJ's assessment of Dr. Bhat's opinion fails to consider the significant factors under 20 C.F.R. § 404.1527(c) favoring the assessment of deferential weight. *Blakley*, 581 F.3d at 406 (stating that when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors" set forth in 20 C.F.R. § 404.1527(c)). Here, the ALJ fails to mention Dr. Bhat's long-term treatment relationship with Plaintiff -- over five years at the time he provided his opinion -- and how he could, therefore, provide a meaningful, "detailed, longitudinal picture of [Plaintiff's] medical impairment[,]" as contemplated by the regulations. *See* 20 C.F.R. § 404.1527(c)(2); PageID 399-401. The ALJ also failed to acknowledge the consistency between Dr. Bhat's opinion and the opinion of podiatrist Tanisha Richmond, D.P.M. -- *i.e.*, the only other medical source to have treated or personally examined Plaintiff.[7] 20 C.F.R. § 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). Notably, Dr. Richmond similarly opined in April 2010 that Plaintiff is limited to sedentary work. PageID 439-40.

Finally, the ALJ's conclusory analysis of the "great weight" given to the record reviewers exacerbates these aforementioned errors. Drs. Hinzman and Manos both provided opinions in which they concluded Plaintiff is capable of medium work activity with postural limitations

---

[7] Plaintiff also argues that the ALJ erred in his treating source analysis of Dr. Richmond. Doc. 7 at PageID 606-11. However, it appears that Dr. Richmond only saw Plaintiff on one occasion and, therefore, Dr. Richmond is not a "treating physician" under the applicable regulations. PageID 439-41; *see* 20 C.F.R. § 404.1502 (defining a treating source as a physician who "has provided [Plaintiff] with medical treatment or evaluation and who has, or has had, an ongoing relationship with [Plaintiff]"; *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). While Dr. Richmond is not a treating source, the ALJ was still required to evaluate her "medical opinion[] according to [the 20 C.F.R. § 404.1527(c)] factors[.]" *Walton*, 1999 WL 506979, at *2. Finding remand warranted based upon the ALJ's analysis of Dr. Bhat's opinion, the undersigned makes no finding regarding Dr. Richmond's opinion. Instead, Dr. Richmond's opinion -- along with all medical opinion evidence of record -- should be assessed anew on remand.

related to her left ankle condition and diabetes. PageID 71, 111-12, 123-25. The entirety of the ALJ's analysis of the record reviewers' opinions is as follows:

> The undersigned gives these opinions great weight and adopted some of the postural restrictions but has further restricted the claimant to no climbing of ladders, ropes, or scaffolds and no work around hazards due to her ankle and diabetes.

PageID 71. The ALJ makes no effort to specifically scrutinize the opinions of the record-reviewers and points to nothing in the record to support their warranting "great weight." The ALJ's conclusory assessment of the record-reviewers' opinions thus erroneously fails to give a meaningful explanation of any of the required 20 C.F.R. § 404.1527(c) factors, and evidences application of "greater scrutiny" to the opinions given by treating sources, a practice deemed error by the Sixth Circuit. *See Gayheart*, 710 F.3d at 380 (holding that "the regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight[,]" and "[i]ndeed, they call for just the opposite"). Therefore, even assuming, *arguendo*, that the ALJ conducted a proper "controlling weight" analysis of Dr. Bhat's opinion, the ALJ's decision should still be reversed as a result of the ALJ's failure to appropriately weigh the opinions of the record-reviewers in accordance with the Social Security regulations and Sixth Circuit precedent.

## IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability

is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

In this case, the evidence of disability is not overwhelming. There are conflicting medical opinions regarding the severity of Plaintiff's impairments. *See supra*. Therefore, a remand for further proceedings is proper. On remand, the ALJ should: (1) conduct an appropriate review of all evidence of record; (2) assess Plaintiff's credibility; and (3) determine Plaintiff's disability status anew.

## V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date: July 11, 2016                          */s/ Michael J. Newman*
                                              Michael J. Newman
                                              United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).